**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Capitol Specialty Insurance Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Colorado River Consulting Incorporated, et al.,<br><br>Defendants. | No. CV-21-00858-PHX-DJH<br><br>**ORDER** |

Before the Court is a "Motion for Leave to Amend Counterclaim" (Doc. 115)[1] ("Motion to Amend") filed by Defendant Calyxt Incorporated ("Calyxt") on behalf of Defendants Jeffrey Nigh and his business Colorado River Consulting, Inc. ("CRC") (together "Nigh") (collectively "Defendants"). The parties have also filed a Joint Status Report (Doc. 121) stating their position on how this matter should proceed after the Court's ruling on the Motion to Amend. The Court must decide whether to modify the Scheduling Order (Docs. 19; 52; 83) under Federal Rule of Civil Procedure 16(b) and permit Defendants' proposed amendment under Rule 15(a). For the following reasons, Defendants' Motion to Amend will be granted because their requested modification is supported by good cause and their Proposed Amended Counterclaim (Doc. 115-5) sets forth allegations, when accepted as true, that adequately state a bad-faith-failure-to-settle claim against Plaintiff Capitol Specialty Insurance Corporation ("Capitol") under Arizona law. The case will be bifurcated thereafter as further explained *infra*.

---

[1] The matter is fully briefed. Plaintiff Capitol Specialty Insurance Corporation filed a Response (Doc. 119) and Defendants filed a Reply (Doc. 122).

I.   **Background**

    A.   **Procedural History**[2]

In May 2021, Capitol filed a Complaint (Doc. 1) seeking a declaratory judgment that it was not contractually obligated to defend or indemnify insured Nigh for claims asserted by Calyxt against Nigh in *Calyxt, Inc. v. Morris Ag Southwest, LLC*, No. 2:20-cv-01221-DLR (D. Ariz. June 18, 2020) (the "Underlying Action"). In response, Nigh counterclaimed (Doc. 15), seeking a declaration that Capitol is obligated to defend and indemnify him in the Underlying Action according to the insurance policy he held with Capitol. Nigh also brought a Third-Party Complaint against his insurance broker, Third Party Defendant Cal Valley Insurance Service Inc. ("Cal Valley"), alleging that Cal Valley breached its professional duties in procuring the insurance policy on Nigh's behalf. (*Id*. at 3–4). Nigh seeks indemnity from Cal Valley if the Court finds that Capitol is not obligated under the terms of the policy. (*Id*.)

The Underlying Action was initiated on June 18, 2020, when Calyxt filed a complaint against Nigh and others. Underlying Action, ECF No. 1; *see also* Doc. 1-1. Calyxt amended that complaint on February 11, 2021. Underlying Action, ECF No. 92; *see also* Doc. 1-2. In its amended complaint, Calyxt alleges that it began developing a high fiber wheat product in 2015. Underlying Action, ECF No. 92 at 7–8. As part of that development, in October 2019, Calyxt planted its wheat seeds in two fields in Somerton, Arizona. *Id*. at 8. Calyxt alleges Nigh was negligent in providing his pest control consulting and recommendation services in connection with an aerial application of the pesticide Clethodim on a field adjoining one of the two fields. *Id*. at 9–23. Neither Capitol nor Cal Valley are parties to the Underlying Action.

On June 26, 2020, Nigh tendered the Underlying Action to Capitol for defense and indemnity. (Doc. 95 at 13). On July 20, 2020, Capitol denied Nigh's tender. (Doc. 100 at 74–77). Nigh retendered after Calyxt filed its Amended Complaint. On

---

[2] The Court has provided a detailed summary of the underlying facts and procedural history of this matter in its prior Order (Doc. 117 at 3-6). The Court will recount a brief summary of the relevant facts here.

- 2 -

April 14, 2021, Capitol again denied Nigh's tender saying "the Property Damage Exclusion and the Pesticide Application Exclusion exclude the Claim from coverage" under Nigh's insurance policy. (Doc. 95-1 at 72–73). Capitol then filed this action seeking a declaration of no coverage. As of November 2, 2022, Capitol agreed to provide Nigh with a defense in the Underlying Action but continues to deny it has a contractual obligation to do so. (Doc. 95 at 13).

### B. Defendants' Proposed Amendment[3]

Defendants seek to file an amended counterclaim that alleges Capitol engaged in bad faith when it failed to accept two settlement demands made by Calyx to settle Nigh's claims in the Underlying Action.

#### 1. The November 2022 Settlement Demand

On November 22, 2022, Calyxt made a settlement demand of $1 million—the amount of the policy limits—to Nigh (the "November 2022 Demand"). (Docs. 115-1 at 4; 115-5 at 2). Nigh's prior counsel communicated that demand to Capitol's counsel and requested that Capitol accept the settlement. (Doc. 115-1. at 2–4). In a December 8, 2022, Letter (Doc. 115-2), Capitol refused the November 2022 Demand for the following reasons:

> The Demand submitted by Calyxt is in excess of the remaining policy limit and does not indicate that it would dismiss Mr. Nigh with prejudice and would further indemnify Mr. Nigh (and/or CRC) from any cross claims that the other defendants in the Underlying Action may choose to bring. As such, the Demand does not guarantee that Mr. Nigh and/or CRC would be fully protected from any personal financial exposure relating to the pesticide incident or the Underlying Action. By Calyxt failing to offer a full and final release of all claims against Mr. Nigh and/or CRC and failing to indemnify Mr. Nigh and/or CRC from any potential cross-claims, Mr. Nigh and CRC may continue to face personal financial exposure after the exhaustion of the Policy. As such, the Demand does not constitute a policy

---

[3] Unless where otherwise noted, these facts are taken from Defendants' Proposed Amended Counterclaim (Doc. 115-5) and supporting exhibits thereto (Docs. 115-1; 115-2; 115-3; 115-4). The Court will assume the Defendants' factual allegations are true, as it must in evaluating whether a proposed amendment is futile. *See Weber v. Allergan Inc.*, 2016 WL 8114210, at *2 (D. Ariz. Feb. 17, 2016); *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, 2015 WL 4651250 at *4 (C.D. Cal. Aug. 4, 2015).

limits demand which, if paid, would protect Mr. Nigh and CRC from all potential future financial exposure relating to this matter.

In addition to the above, it is CSIC's understanding that both liability and damages are highly disputed in the Underlying Action. Regarding liability, Mr. Nigh complied with Arizona law and the applicable guidelines for the pesticide selection and application. With regard to damages, and without waiving any arguments as to liability, it is CSIC's understanding that Calyxt's asserted damages are highly speculative in nature and that the other defendants in underlying action view any damages that Calyxt may have sustained to be in the low six figures. Thus, Calyxt's demand for payment in an amount that greatly exceeds the reasonable amount of its alleged damages and in an amount that exceeds the applicable policy limits is without merit.

(*Id*. at 5).

### 2. The July 2023 Settlement Demand

On July 10, 2023, Calyxt renewed its $1 million settlement demand to Nigh under the following terms:

Calyxt offers to enter into a settlement in which, in exchange for prompt payment of $1 million less whatever has been incurred as "Claims Expenses" as defined in the Miscellaneous E&O Policy issued by CapSpecialty to Colorado River Consulting, Inc. ("CRC"), Calyxt will fully and finally release all its claims against Mr. Nigh and/or CRC that were alleged or could have been alleged in the Underlying Action and indemnify Mr. Nigh and/or CRC from any potential cross-claims in that action.

(Doc. 115-3) ("the July 2023 Demand").  In an email, Calyxt's Counsel "suggest[ed] [Nigh's Counsel] immediately demand that Cap[itol] and Cal Valley take advantage of this opportunity."  (*Id*.)  Nigh's Counsel communicated the July 2023 Demand to Capitol's Counsel via a July 11, 2023, letter and demanded that Capitol and Cal Valley pay the requested amount.  (Doc. 115-4 at 2).  Capitol refused.

### 3. The September 2023 Final Judgment in the Underlying Action

On September 26, 2023, pursuant to an Agreement, Assignment, and Covenant Not to Execute (the "Agreement"), a judgment in the amount of $1,800,000 was entered against Nigh in the Underlying Action.  Underlying Action, ECF No. 269 (the

- 4 -

"September 2023 Final Judgment"). Under the terms of the Agreement, Nigh assigned their claims against Capitol to Cibus, Inc., Calyxt's successor.[4] (Doc. 115 at 3).

## II. Motion for Leave to Amend (Doc. 115)

Defendants request the Court modify the Scheduling Order under Rule 16(b) so that they can file their Proposed Amended Counterclaim for Capitol's bad-faith-failure-to-settle under Rule 15(a). The Court will address each request in turn.

### A. Modification of the Scheduling Order

Generally, Rule 15(a) governs a motion to amend pleadings. Fed. R. Civ. P. 15(a). However, because the Court has already issued various amended Scheduling Orders in this case and the deadline for filing amended pleadings has already passed, Rule 16(b)(4) first governs the determination of whether to allow Defendants to file an amended counterclaim rather than Rule 15(a)'s more permissive standard. In other words, at this juncture, a motion seeking to amend a pleading is governed secondarily by Rule 15(a), only after Rule 16(b)(4) has been satisfied. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). Accordingly, the Court will first evaluate Defendant's Motion to Amend under Rule 16(b)(4), and then, if necessary, under Rule 15(a).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)[(4)]'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, "the focus of the [Rule 16(b)(4)] inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citation omitted).

Here, Defendants argue there is good cause to modify the Scheduling Order to

---
[4] For consistency, the Court will continue to refer to Cibus, Inc. as Calyxt.

- 5 -

permit their proposed bad-faith-failure-to-settle counterclaim because the cause of action was not ripe until the September 2023 Final Judgment was entered in the Underlying Action, which posed a delay outside of Nigh's control. (Doc. 115 at 4). They further contend it is more efficient to resolve the claim in the present matter rather than require them to commence a separate action. (*Id*. at 5). Capitol does not respond to Defendants' assertions. (*See generally* Doc. 119).

The record shows that Defendants filed their Motion to Amend forty-two days after the September 2023 Final Judgment was entered in the Underlying Action. *Compare* Doc. 115 *with* Underlying Action, ECF No. 269. So, the Court finds that Defendants' modification request is supported by good cause and diligence because, as noted by Defendants, a "third-party bad faith failure-to-settle claim accrues at the time the underlying action becomes final and non-appealable." (Doc. 115 at 4 (quoting *Taylor v. State Farm Mut. Auto. Ins. Co*., 913 P.2d 1092, 1097 (Ariz. 1996)).

**B.     Leave to Amend**

Having settled that Defendants' request to modify the Scheduling Order is supported by good cause, the Court will now assess the merits of Defendants' Proposed Amended Counterclaim.

**1.     Rule 15(a)**

Rule 15(a) allows a party to amend its pleading with the court's leave at any time, and such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). However, courts can exercise discretion to deny a motion for leave to amend if the amendment: (1) would cause the opposing party undue prejudice; (2) is sought in bad faith; (3) constitutes an exercise in futility; or (4) creates undue delay. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The party opposing the amendment bears the burden of showing how the amended complaint would cause undue prejudice or is brought in bad faith. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

### 2. Whether Defendants' Proposed Counterclaim is Futile

Defendants argue their Motion to Amend should be granted because their proposed counterclaim will not create undue delay; will not prejudice Capitol; promotes judicial economy because denial of the amendment would result in Nigh commencing a separate cause of action; and is not futile because it sets forth facts, when taken as true, that establish a bad-faith-failure-to-settle claim. (Doc. 115 at 4–7). Capitol does not respond to Nigh's arguments regarding undue delay, prejudice, or judicial economy. (*See generally* Doc. 119). Capitol's sole argument in its Response is that the amendment should be denied on futility grounds. (Doc. 119 at 5–9).

### a. Legal Standards for Futility

The test for whether a motion for leave to amend is futile is the same as the test for dismissal under Rule 12(b)(6)—that is, whether a proposed amendment states a plausible claim for relief when taking the facts alleged as true. *See Weber v. Allergan Inc.*, 2016 WL 8114210, at *2 (D. Ariz. Feb. 17, 2016) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)); *Gibson Brands, Inc. v. John Hornby Skewes & Co.,* 2015 WL 4651250 at *4 (C.D. Cal. Aug. 4, 2015). A claim is facially plausible if the plaintiff alleges enough facts to permit a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Leave to amend should be denied as futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

Here, Defendants seek to add a counterclaim for Capitol's failure to settle in bad faith. The Arizona Court of Appeals has summarized the requirements for bad-faith-failure-to-settle claims brought by insureds against insurers as follows:

> "[A]n insurance company owes its insured a duty of good faith in deciding whether to accept or reject settlement offers." *Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 792 P.2d 749, 752 (Ariz. 1990). This duty stems from the implied covenant of good faith and fair dealing that arises from the underlying contractual relationship. *See id.* at 291, 792 P.2d at 754; *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1094 (Ariz.

1996).

> The tort of bad faith has two elements: first, "that the insurer acted unreasonably toward its insured" and, second, "that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1339 (Ariz. Ct. App. 1995). When an insurer allegedly acts in bad faith in its duty to indemnify or protect its insured against liability to third parties, the action is classified as a third-party claim. *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 792 P.2d 719, 721 (Ariz. 1990). . . . And, in the third-party context, the duty of good faith requires an insurance company to give "equal consideration to the protection of the insured's as well as its own interests." *Hartford*, 792 P.2d at 752; *see also Clearwater*, 792 P.2d at 723.

*Acosta v. Phoenix Indem. Ins. Co.*, 153 P.3d 401, 404 (Ariz. Ct. App. 2007). Generally, "the duty of good faith requires that neither party act in a manner that would damage the rights of the other party to receive the benefits flowing from the underlying contractual relationship." *Taylor*, 913 P.2d at 1094 (citing *Rawlings v. Apodaca*, 726 P.2d 565, 569–70 (Ariz. 1986)). " 'In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer.' " *Acosta*, 153 P.3d at 404 (quoting *Clearwater*, 792 P.2d at 723).

### b.     The Parties' Arguments

In light of the requirements for bad-faith-failure-to-settle claims, Capitol's position is that Nigh needs to establish that Capitol "failed to give equal consideration to Nigh in rejecting the November 22, 2022, offer and July 10, 2023, offer." (Doc. 119 at 7 (citing *State Farm Auto Ins. Co. v. Civil Service Employees Ins. Co.*, 509 P.2d 725, 733–34 (Ariz. Ct. App. 1973)). Capitol argues Nigh cannot because neither of the Demands were on terms that a prudent insurer would have accepted. (*Id.*) For further support, Capitol cites to various "rulings" the Court made in its March 30, 2024, Order denying Capitol summary judgment (Doc. 117) (the "Summary Judgment Order"):

1.     "The Court finds that Capitol has met its burden of showing the

        Property Damage Exclusion on page four and Agricultural Change Consultant Endorsement that replaces the Property Damage Exclusion, as written, apply to the claims alleged by Calyxt against Nigh in the Underlying Action." (Doc. 117, Page 10, Lines 8-11).

2.    "On its face, the property damage exclusion applies to Calyxt's claim against Nigh and would exclude this type of coverage." (Doc. 117, Page 10, Lines 19-20).

3.    "The express terms of Nigh's Policy supports Capitol's refusal to defend or indemnify Nigh for claims asserted by Calyxt against Nigh in the Underlying Actions." (Doc. 117, Page 24, Lines 14-15)

(Doc. 119 at 8). Capitol argues these rulings "establish that Capitol not only acted reasonably in not accepting the settlement offers, but also gave equal consideration to both the interests of Nigh and its own." (*Id*. at 8–9). Defendants contends that Capitol's interpretation of the Summary Judgment Order is self-serving, and that the Summary Judgment Order did not address the issue of Capitol's prudence in denying Nigh coverage, much less raise or opined on Capitol's prudence when rejecting the Demands. (Doc. 122 at 5).

        **c.**    **Capitol's Interpretation of the Summary Judgment Order is Flawed**

The Court finds it necessary to first clarify the parties' competing interpretations of the Summary Judgment Order.[5] When citing the "rulings" above, Capitol selectively highlights the first portion of the Summary Judgment Order that held that the property damage exclusion, on its face, applies to Calyxt's claim against Nigh and would exclude this type of coverage. (*See* Doc. 117 at 7–10). But the Court went on to hold that this

---

[5] As explained in the Summary Judgment Order, the reasonable expectation doctrine recognizes that "a contracting party's reasonable expectations may affect the enforceability of non-negotiated terms in a standardized agreement." (Doc. 117 at 11 (quoting *Averett by & Through Averett v. Farmers Ins. Co.*, 869 P.2d 505, 506 (1994)). The doctrine relieves a party from "certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them." *Id*. (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396–97 (Ariz. 1984)). The Court summarized the implications of the reasonable expectation doctrine in this case in the Summary Judgment Order. (*Id*. at 11–16).

conclusion does not end the inquiry on Capitol's request for a declaration of no coverage because summary judgment cannot be entered in favor of an insurer under Arizona law unless it can establish that the reasonable expectations doctrine does not apply to preclude enforcement of the exclusion. (Doc. 117 at 10 (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396–97 (Ariz. 1984) (adopting § 211 of Restatement (Second) of Contracts (1981). In other words, the "rulings" that Capitol points to are merely the Court saying that the language of Nigh's policy would exclude the claim at issue here *if and only if* Arizona law did not also require the Court to apply the reasonable expectation doctrine.

By failing to recognize the broader context of the Summary Judgment Order, Capitol seems to argue that the Court can ignore the reasonable expectations of the insured doctrine when determining whether Capitol acted reasonably in refusing to settle. Capitol's position is flawed because it ignores the whole basis on which summary judgment was denied—that is, disputes of fact remain as to whether the reasonable expectations doctrine should apply to enforce Nigh's expectation of coverage. (*Id*. at 14–16). Defendants are correct that the Summary Judgment Order did not opine on the issue of Capitol's prudence when rejecting the Demands. At this juncture, these "rulings" do not establish that Defendants' proposed bad faith counterclaim is futile under Rule 15(a).

### d. Defendants' Bad-Faith-Failure-to-Settle Claim May Move Forward

Nigh alleges that Capital failed to settle in good faith when it rejected two settlement offers. Turning to the November 2022 Demand, Defendants' only allegations of bad faith is that Capitol rejected the demand notwithstanding the fact it "fell within the $1 million limit of the Policy and a prudent insurer without policy limits would have accepted." (Doc. 115-5 at ¶ 10). The Court notes that even when believing that fact as true, Capitol points out that Nigh's own exhibits demonstrate that Capitol had other reasons for rejecting the November 2022 Demand—namely, it did not provide for a dismissal of Nigh with prejudice from the Underlying Action and it did not provide that

Calyxt would indemnify Nigh from and against any claims that could or would be brought against Nigh by other defendants in the Underlying Action. (Docs. 119 at 7; 115-2 at 5).

However, the face of the July 2023 Demand appears to correct all the issues Capitol identified in the November 2022 Demand. Capitol agrees as much. (Doc. 119 at 7). So, Defendants' allegations that the July 2023 Demand fell within the $1 million limit of the policy and Capitol knowingly acted unreasonably by failing to give equal consideration to the interests of Nigh when rejecting the demand adequately state a claim for bad-faith-failure-to-settle. *See Acosta*, 153 P.3d at 404; *cf. Tucson Airport Auth. v. Certain Underwriters at Lloyd's*, 918 P.2d 1063, 1065–66 (Ariz. Ct. App. 1996) (reversing a trial court's dismissal of an amended complaint because it adequately pled facts in light of the standard that "conduct by the insurer which does destroy the security or impair the protection purchased breaches the implied covenant of good faith and fair dealing implied in the contract") (quoting *Rawlings*, 726 P.2d at 571). Thus, Defendants are granted leave to file an amended counterclaim.

### III. The Parties' Joint Status Report

The Court last turns to Defendants, Capitol, and Cal Valley's Joint Status Report, which states their position on how the Court's ruling on the Motion to Amend would affect the procedural posture of this case. Their position is that if the Court grants Defendants' Motion, Defendants "will be allowed to amend its counterclaim and assert a claim for bad faith against Capitol" and "may attempt to pursue the [September 2023 Final] Judgment against Capitol." (Doc. 121 at 3). In that event, the parties believe that Capitol will have the right to request a reasonableness hearing to challenge the reasonableness of the amount of the September 2023 Final Judgment. (*Id.*) The parties also anticipated that additional discovery, depositions, retention of expert witnesses, and motion practice will be required as a result of the amended counterclaim. (*Id.*) The parties imply that these additional tasks would impede their readiness for a final pretrial conference, and propose to file an updated joint status report within ten (10) days of this

Court's issuance of this Order to address the proper procedure moving forward. (*Id*.)

Having settled *supra* that Defendants' Motion to Amend will be granted, the following claims are live in this action:

(1) Capitol and Nigh's cross claims for declaratory judgement, which depends on whether Nigh had a reasonable expectations of coverage under the policy issued by Capitol;

(2) Nigh's third-party professional negligence claim against Cal Valley, which depends on whether Cal Valley, as Nigh's insurance broker, breached its professional duty when procuring Nigh's policy with Capitol; and

(3) Nigh's bad-faith-failure-to-settle counterclaim against Capitol, which depends on whether Capitol acted in bad faith when rejecting Calyxt's settlement offers.

In light of discovery being long completed on the declaratory judgment and professional negligence claims, the age of the case, and the interest of judicial economy, the Court finds the best way to proceed is to bifurcate the claims. Accordingly, the declaratory judgment and professional negligence claims will proceed to trial and the parties shall prepare for a final pretrial conference, to be set by separate Order. Concurrently, the Court will allow the parties to engage in discovery related to Nigh's bad-faith-failure-to-settle counterclaim against Capitol according to the Court-imposed dates stated below.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Leave to Amend Counterclaim (Doc. 115) is **GRANTED**. **Within three (3) days of this Order**, Defendants shall file a clean version of their Answer and Counterclaim in accordance with the terms of this Order. Capitol shall file its Amended Answer thereafter.

**IT IS FURTHER ORDERED** that the parties shall proceed to trial on the remaining declaratory judgment and professional negligence claims. A final pretrial conference on these claims will be set by way of a separate Order.

**IT IS FURTHER ORDERED** that discovery is reopened only as it relates to Nigh's bad-faith-failure-to-settle counterclaim against Capitol. The following deadlines

will apply:

(1) Fact Discovery Deadline: August 9, 2024

(2) Defendants' Expert Disclosure Deadline: August 23, 2024

(3) Capitol's Expert Disclosure Deadline: September 6, 2024

(4) Rebuttal Expert Disclosures Deadline: September 20, 2024

(5) Expert Depositions Deadline: September 27, 2024

(6) Dispositive Motions Deadline: October 27, 2024

**IT IS FINALLY ORDERED** that within seven (7) days of this Order the parties shall meet and confer on whether settlement is feasible and jointly notify the Court whether the parties seek a referral to a magistrate judge for a settlement conference.

Dated this 18th day of June, 2024.

Honorable Diane J. Humetewa
United States District Judge