**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Capitol Specialty Insurance Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Colorado River Consulting Incorporated, et al.,<br><br>Defendants. | No. CV-21-00858-PHX-DJH<br><br>**ORDER** |

Before the Court are Motions in Limine filed by Plaintiff Capitol Specialty Insurance Company ("Capitol") (Docs. 139, 140),[1] Defendant and Third-Party Plaintiff Jeffrey Nigh ("Mr. Nigh"), Colorado River Consulting, Inc. ("CRC"), and Calyxt, Inc. ("Calyxt") (collectively, "Nigh") (Doc. 141),[2] and Third-Party Defendants Cal Valley Insurance Services, Inc. ("Cal Valley") (Docs. 146, 147).[3] The Court, having reviewed the same, rules as follows:[4]

/ / /

/ / /

/ / /

---

[1] Nigh filed Responses of non-opposition to Capitol's Motions in Limine (Docs. 152 & 154, respectively). Cal Valley filed Responses (Docs. 156 & 157, respectively).

[2] Capitol joined in Nigh's Motion in Limine (Doc. 149), and Cal Valley filed a Response (Doc. 158).

[3] Capitol joined in Cal Valley's Motions in Limine (Docs. 150 & 151, respectively), and Nigh filed Responses (Docs. 153 & 155, respectively).

[4] Motions in Limine not ruled upon herein will be addressed during the Final Pretrial Conference.

1. **Capitol's Motion in Limine to Exclude Portions of Dale Crawford's Expert Testimony (Doc. 139); Cal Valley's Response (Doc. 156).**

Capitol's first Motion in Limine seeks to exclude Cal Valley's insurance industry expert witness, Mr. Dale Crawford, from testifying that "Mr. Nigh had a reasonable expectation of coverage under Miscellaneous E&O Policy No. 0000728-10 issued by Capitol." (Doc. 139 at 1). Capitol asserts that Mr. Crawford's expected testimony that "Mr. Nigh had a reasonable expectation of coverage would opine on an ultimate issue of law in this case and is impermissible and should be excluded." (*Id.* at 2). Capitol further states that Mr. Crawford's opinion that Mr. Nigh had a reasonable expectation of coverage is unnecessary, unhelpful, and invades the province of the Jury. (*Id.*) Capitol says that Mr. Crawford does not possess any unique skills, experience, or knowledge qualifying him to speculate about Mr. Nigh's beliefs concerning coverage." (*Id.* at 3).

Cal Valley states that Mr. Crawford's testimony will "opine exclusively upon the duties of Cal Valley in obtaining insurance for [Nigh]. . . and whether Cal Valley met the standard of care, the exercise of reasonable care, skill and diligence in carrying out its duties in procuring insurance." (Doc. 156 at 2). Specifically, Cal Valley states "[t]here is no mention at all of the 'reasonable expectations' of Nigh" in his report or deposition. (*Id.*) Cal Valley says the only time Mr. Crawford came close to providing his opinion as to whether Mr. Nigh had a reasonable expectation of coverage under the Capitol policies was when Capitol's counsel squarely asked him as much during his deposition. (*See e.g.*, Doc. 156-1 at 48:9–12 (Q: "Do you believe that Jeffrey Nigh had a reasonable expectation of coverage under the Capitol policies for the claims asserted by Calyxt?" A: "Yes.").

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). Under Rule 702, a qualified expert may testify based on "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and

"reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.* The proponent of expert testimony has the burden to show that the expert is qualified and the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." A court need not exclude testimony simply because it opines on an ultimate issue if the court finds the opinion would aid the jury's understanding of it. So long as the testimony meets the qualifications of relevancy under Rule 401 and Rule 702, the opinion may be introduced. An expert qualified by experience may testify in the form of opinion if his experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, if the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

Mr. Crawford issued a report that "provide[s] opinions relating to the duties of Cal Valley in providing insurance to CRC and Nigh." (Doc. 103-6 at 7). He states "[t]his report will provide opinions based upon custom and practice in the insurance industry regarding the actions of Cal Valley in providing insurance to CRC and Nigh." (*Id.* at 8). However, Mr. Crawford does, to an extent, opine on Mr. Nigh's expectations. For example, he concludes "the actions of Capitol following Nigh's report of a claim made against him that resulted from the original claim by Caylxt were vastly different from what he could have anticipated from the coverage he expected and believed the policy offered." (*Id.* at 10). Mr. Crawford ultimately concludes "It is my opinion that the insurance coverage obtained for Nigh by Cal Valley was entirely appropriate. It is also my opinion that an experienced agent would reasonably expect that an insurer would protect its policyholder in this situation, rather than deny coverage." (*Id.* at 12).

Capitol does not challenge the qualifications of Mr. Crawford as to his ability to

testify about whether Cal Valley met the standard of care in procuring insurance for Nigh. Rather, they challenge his qualifications to opine about whether Mr. Nigh had a reasonable expectation of coverage by Capitol.  Indeed, the deposition testimony attached to Cal Valley's Response demonstrates that Mr. Crawford was asked, in different ways, whether Mr. Nigh had a reasonable expectation of coverage:

> Q. "[i]s it your contention that Jeffrey Nigh believed the policies issued by Capitol provided coverage for the claims asserted by Calyxt?
> A. Yes…
> . . .
> Q. Do you believe that Jeffrey Nigh had a reasonable expectation of coverage under the Capitol policies for the claims asserted by Calyxt?
> A. Yes…
> . . .
> Q. So is it fair to say that Mr. Nigh's reasonable expectation of coverage would come exclusively from his communications with Cal Valley?
> . . .
> A. Yes, with the exception of the denial letters.

(Doc. 156-1 at 48:9–12; 48:13–16; 50:6–11).

The Court finds that because Capitol's counsel asked Mr. Crawford to opine about whether Mr. Nigh's reasonable expectation of coverage, he may so testify. The Court observes that in the deposition, Mr. Crawford was unable to testify about what Mr. Nigh reviewed or did not review in the process of contracting with Capitol.  So, Mr. Crawford may only testify based upon his understanding of what Mr. Nigh read, reviewed, or was told, and his experience working with insureds.  Moreover, as Mr. Nigh's reasonable expectation of coverage is an issue to be determined by the trial jury, the Court finds his testimony will aid the jury in that regard.

The Court thus **denies** Capitol's Motion in Limine (Doc. 139).  Mr. Crawford may testify regarding Mr. Nigh's reasonable expectation of coverage by Capitol.

**2. Cal Valley's Motion in Limine No. 1 Regarding Testimony of Victoria R. Roberts (Doc 146); Plaintiff Capitol's Response (Doc. 146).**

Cal Valley seeks an order "to limit testimony of [Capitol's] disclosed rebuttal expert Victoria R. Roberts." (Doc. 146 at 1).  Cal Valley acknowledges that Ms. Roberts "offers

some rebuttal to Dale Crawford's expert report and his citation to provisions in the insurance policy at issue." (*Id.* at 2). However, Cal Valley contends that her "opinions that claims handling was proper and there was no bad faith are not relevant to the sole third-party claim of negligence against Cal Valley." (*Id.*) Cal Valley also asserts that Capitol has no standing to rebut Dale Crawford's opinions about whether it breached the standard of care for an insurance agent/broker in obtaining Nigh insurance. (*Id.*) Cal Valley does not otherwise challenge Ms. Roberts' qualifications or methodologies enabling her to provide expert testimony.

Capitol asserts that it intends to present testimony of Ms. Roberts "only if needed to rebut testimony of . . . Dale Crawford." Capitol further clarifies that "Ms. Roberts will not testify or opine regarding the actions of Cal Valley or whether Cal Valley breached its duties to . . . Mr. Nigh." The Court will hold Capitol and Ms. Roberts to that clarification.

The Court, having previously ruled that Mr. Crawford could opine as to an insured's reasonable expectation, will allow Ms. Roberts to provide rebuttal testimony to his opinion, if warranted. The Court finds that such testimony may aid the jury in its determination of whether Mr. Nigh had a reasonable expectation of coverage. Ms. Roberts may not testify about the actions of Cal Valley or whether Cal Valley breached its duties to Mr. Nigh.

In all other respects, Cal Valley's Motion in Limine No. 1 is **denied**. (Doc. 146).[5]

**3. Cal Valley's Motion in Limine No. 2 Seeking to Limit Nigh's Damage Evidence (Doc. 147); Nigh's Response (Doc. 153).**

Cal Valley also seeks an order "limiting evidence of [Nigh's] damages to admissible evidence of actual/compensatory damages which will place them in the equivalent pecuniary amount to which they were before, the out-of-pocket monetary loss caused by the underlying lawsuit." (Doc. 147 at 3).

Under Arizona law, "[t]o establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care;

---

[5] Having ruled that Capitol's expert, Ms. Roberts, and Cal Valley's expert, Dale Crawford, may testify about an insured's reasonable expectation, the Court necessarily denies Capitol's Motion in Limine to Exclude Certain Evidence and Testimony (Doc. 140). The Court finds that the experts' opinions will aid the jury in its determination. Capitol's Motion in Limine (Doc. 140) is therefore **denied**.

(2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (en banc). Cal Valley contends that in proving his actual damages, Nigh must be limited to showing only "out-of-pocket damages." (Doc. 147 at 3). Cal Valley argues that in light of the *Morris/Webb* agreement and covenant not to execute between Nigh and Calyxt, Nigh does not "and will not, have **any** out-of-pocket or pecuniary loss from the stipulated Judgment." (*Id.*) Nigh, in response, says that "[a] holding that an insured suffers no damages because of a covenant not to execute runs contrary to the Arizona's Supreme Court's *Webb* decision and undermines its approval of *Webb* agreements." (Doc. 153 at 3).

The court in *Webb* found an insured's agreement to assign his professional negligence claims against his insurance agent in exchange for a covenant not to execute on the stipulated judgment against him was valid and enforceable. *Webb v. Gittlen*, 174 P.3d 275 (Ariz. 2008). The court said such assignments would "serve the goals of affording compensation for the clients who are victims of professional negligence (who benefit from the consideration they receive for assigning their claims), increasing the likelihood that the victims of the underlying tort are compensated (insofar as they can recover on the assigned claim against the agent), and deterring negligence on the part of insurance agents." *Id.* at 281.

Though *Webb* squarely addresses the issue of whether one can validly assign a professional negligence claim, it does not necessary speak to the legal effect of a covenant not to execute on the element of damages in a claim for professional negligence. In seeking to limit Nigh's damage evidence to only "out-of-pocket" damages, Cal Valley effectively argues that the professional negligence claim against it cannot be proven because Nigh is insulated by all actual damages via the *Morris/Webb* agreement between Nigh and Calyxt.

The Court agrees with Nigh that this position goes too far and would undermine the Arizona Supreme Court's approval of *Morris/Webb* agreements. In *State Farm Mut. Auto. Ins. Co. v. Paynter*, 593 P.2d 948, 953 (Ariz. App. 1979), the court rejected a similar

argument advanced by an insurer, noting that a "covenant not to execute is not a release which would permit the insurer to escape its obligations." *Id.* (citing *Globe Indem. Co. v. Blomfield*, 562 P.2d 1372 (Ariz. App. 1977). Arizona courts thus find that the underlying tort liability remains intact and a breach of contract action lies if the injured party seeks to collect on the judgment. *Id.* Applying this theory in the insurance agent context, an insured would be injured by the insurance agent's negligence in failing to procure a policy because he would have the outstanding "liability" against which he sought to insure.

Relatedly, it is likely that Arizona follows a majority of jurisdictions that apply the "judgment rule" to this issue. *See e.g.*, *McLellan v. Atchison Insurance Agency, Inc.*, 812 P.2d 559 (Haw. Ct. App. 1996).[6] Jurisdictions applying the judgment rule hold that "mere entry of a final judgment against the insured constitutes actual damage to him or her." *Id.*

> Courts enforcing the judgment rule, that the tort is complete when judgment becomes final, adopt the view that intangible harms are remedial in suits of this kind, and cite such factors as damage to credit and general reputation, loss of business opportunities, and the like, as sufficient in and of themselves to afford a basis for recovery.

*Id.* (citing Annotation, Liability Insurer's Failure to Settle, 63 A.L.R.3d 627, 632 (1975)).

In light of the foregoing, Cal Valley's Motion in Limine broadly seeking to limit Nigh to evidence showing only "out of pocket monetary loss" (Doc. 147) is **denied**. The covenant not to execute was not a release of claims and Arizona, in applying the "judgment rule," would allow Nigh to offer damage evidence beyond that which may show out-of-pocket monetary loss.

Accordingly,

**IT IS ORDERED denying** Capitol's Motion in Limine (Doc. 139), Capitol's

---

[6] In *McLellan*, the Hawaii court addressed a similar factual situation in concluding that "a covenant not to execute does not *per se* eliminate the fact of damages." *Id.* at 565. Like here, an insured sued his insurance broker for negligently failing to explain that the insurance policy purchased would not have covered the claims at issue in the underlying litigation. 912 P.2d at 561–62. And like here, the issue there was whether the stipulated judgment and covenant not to execute obtained in the settlement of the underlying litigation prevented the insured's assignee from pursuing damage claims against the insured's insurance broker. *Id.* The court adopted the judgment rule and allowed the professional negligence claim to proceed. In doing so, the court noted that Arizona also follows this majority view. *Id.* at 564.

Motion in Limine (Doc. 140), Cal Valley's Motion in Limine No. 1 (Doc. 146), and Cal Valley's Motion to Limine No. 2 (Doc. 147).

Dated this 3rd day of September, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge