**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Capitol Specialty Insurance Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>Colorado River Consulting Incorporated, et al.,<br><br>                Defendants. | No. CV-21-00858-PHX-ROS<br><br>**ORDER** |

Before the Court is Plaintiff Capitol Specialty Insurance Corp.'s Motion for New Trial Pursuant to F.R.C.P. 59(A). (Doc. 261.) Defendants Colorado River Consulting, Inc., Jeffrey Nigh,[1] and Calyxt, Inc. responded, (Doc. 262), as did Third-Party Defendant Cal Valley Insurance Services, Inc., (Doc. 265). Plaintiff thereafter replied. (Doc. 266.) For the reasons that follow, the Court will deny Plaintiff's Motion for New Trial.

**I.    BACKGROUND**

Plaintiff brought this matter seeking a declaratory judgment that its insurance policy ("Policy 11") issued to Nigh provided no coverage—and that Plaintiff had no duty to defend or indemnify Nigh—for claims asserted by Defendant Calyxt against Nigh in an underlying lawsuit. Defendants Nigh and Calyxt filed counterclaims for a declaratory judgment that Plaintiff is obligated to defend and indemnify Nigh against Calyxt's claims. Nigh also filed a Third-Party Complaint against his insurance broker, Cal Valley Insurance Services, Inc. ("Cal Valley"), requesting judgment be entered against Cal Valley for the

---

[1] The Court uses "Nigh" to refer collectively to both Mr. Nigh and his business, Colorado River Consulting, Inc.

costs of defense and indemnification should Plaintiff prevail on the coverage issue. Phase One of this matter was tried before an eight-person jury beginning on June 25, 2025. The jury returned a verdict for Defendants on July 2, 2025, finding Policy 11 provides coverage for Calyxt's claims against Nigh.

Prior to trial, the Court made three rulings at issue in Plaintiff's Motion for New Trial. First, Plaintiff proposed an instruction on the imputation of knowledge doctrine, arguing it was necessary because Cal Valley acted as Nigh's agent; thus, Cal Valley's knowledge of the Property Damage Exclusion ("Exclusion") in the policy should be imputed to Nigh and establish he knew Policy 11 contained the Exclusion at the time he purchased it. After briefing the issue, the Court declined to give Plaintiff's proposed instruction on imputed knowledge because "Plaintiff failed to cite any relevant authority supporting imputation of an insurance agent's knowledge onto an insured in the context of a reasonable expectations doctrine case." (Doc. 226 at 1.)

Second, the parties originally stipulated to an instruction on the reasonable expectations doctrine, but nineteen days before trial, Plaintiff requested the instruction be modified to clarify the doctrine only applies if "Capitol had reason to believe" Nigh would not have agreed to the Exclusion in Policy 11 if he were aware of it. (Doc. 210 at 11.) Plaintiff argued this additional language was required by *State Farm Fire & Casualty Insurance Co. v. Grabowski*, 150 P.3d 275 (Ariz. Ct. App. 2007). In response, Defendants proposed that if this language were included, additional language from *Grabowski* was needed to explain to the jury how to determine an insurer's reason to believe. (Doc. 218 at 58–59.) Over Plaintiff's objection, the Court's final instruction on the reasonable expectations doctrine incorporated both requested portions of the *Grabowski* language. (*See* Doc. 253 at 25–26.)

Third, the Court excluded all evidence after the issuance of Policy 11, finding subsequent policies and declination-of-coverage letters were not relevant to Nigh's reasonable expectations at the time he executed Policy 11.[2] (*See* Doc. 231 at 93–94.)

---

[2] Although the contested exhibits were not relevant to Plaintiff's case-in-chief, the Court did not preclude use of the exhibits for potential cross-examination purposes. (*See* Doc.

## II. LEGAL STANDARD

After a jury trial, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Recognized grounds for a new trial "include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citing *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998)). Unlike a Rule 50 motion, a district court reviewing a motion for a new trial has "the duty, to weigh the evidence as [the Court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence," where the Court believes "the verdict is contrary to the clear weight of the evidence" or to prevent a miscarriage of justice. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957), *cert. denied*, 356 U.S. 968 (1958)). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Id.* (first citing *Rinker v. Cnty. of Napa*, 831 F.2d 829, 832 (9th Cir. 1987); and then citing *Cleveland v. S. Pac. Co.*, 436 F.2d 77, 80–81 (9th Cir. 1970)).

## III. ANALYSIS

Plaintiff moves for a new trial on three grounds: (1) the Court failed to give Plaintiff's requested jury instruction on the imputation of knowledge doctrine; (2) the Court improperly instructed the jury on the reasonable expectations doctrine; and (3) the Court erroneously excluded relevant evidence of subsequent insurance policies and declination-of-coverage letters. (Doc. 261 at 6.)

---

231 at 93–94.)

**A. Instruction on Imputation of Knowledge Doctrine**

Plaintiff argues it was unfairly prejudiced by the Court's failure to instruct the jury on the imputation of knowledge doctrine, "a fundamental principle of agency law critical to Capitol's case-in-chief." (*Id.* at 1.) "A party is entitled to an instruction concerning his or her theory of the case if it is supported by law and has some foundation in the evidence." *Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994) (citing *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 978 (9th Cir. 1987)).

Arizona law is clear: standardized insurance contract terms that would confuse a "reasonably intelligent consumer" are to be interpreted "in light of the objective, reasonable expectations of an average insured," not the expectations of a professional insurance agent. *See Gordinier v. Aetna Cas. & Surety Co.*, 742 P.2d 277, 272 (Ariz. 1987). Plaintiff again argues there is no caselaw forbidding its proposed instruction on imputation of knowledge; but crucially, Plaintiff still fails to offer any relevant legal authority supporting its theory of the case by applying the imputation of knowledge doctrine in the insurance context.

In its Reply, Plaintiff cites *Smith v. Hughes Aircraft Co.*, 783 F. Supp. 1222, 1229 (D. Ariz. 1991), and similar cases where courts have declined to apply the reasonable expectations doctrine to a "sophisticated buyer of insurance." (*See* Doc. 266 at 2–3.) Plaintiff evidently references *Smith* and similar cases in an attempt to refute Defendants' argument that imputing Cal Valley's knowledge to Nigh "would dramatically change the [Reasonable Expectations] Doctrine to the point such that it is unclear how one would ever be able to maintain a Reasonable Expectations Doctrine claim." (*See* Doc. 262 at 6.) But these cases where the reasonable expectations doctrine did not apply provide no conceivable support for Plaintiff's position that an imputation of knowledge instruction is appropriate when the reasonable expectations doctrine does apply. Plaintiff has not demonstrated the proposed instruction on the imputation of knowledge doctrine should have been given.

**B. Instruction on Reasonable Expectations Doctrine**

Plaintiff argues the jury was improperly instructed on the reasonable expectations

doctrine because the instruction "did not accurately reflect Arizona law and contained factors that were not legally binding and prejudiced Capitol." (Doc. 261 at 3.) Specifically, Plaintiff objects to the following language in Jury Instruction No. 23 concerning whether Plaintiff "had reason to believe Mr. Nigh would not have agreed to the Property Damage Exclusion if he were aware of it":

> Such a belief may be shown by the prior negotiations or inferred from the facts. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the insured never had an opportunity to read the term, or it is illegible or hidden from view. All other factors relevant to what the insured reasonably expected in the policy must also be considered.

(Doc. 253 at 25.)

"Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). "The trial court has broad discretion in formulating jury instructions . . . . So long as the instructions on each element of the case are adequate to ensure that the jury fully understands the issues, no particular formulation or wording is necessary." *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987) (first citing *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir. 1985); and then citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984)).

First, Plaintiff contends the instruction on the reasonable expectations doctrine confused the jury and was prejudicial to Plaintiff because "[t]he listing of certain 'permissive factors' that ***may be shown or inferred*** followed by a phrase that any other relevant factor ***must be considered*** removes the idea that any of the permissive factors are truly permissive and do not need to be considered." (Doc. 261 at 11.) The Court disagrees. The instruction simply emphasizes the jury is required to consider (i.e., may not ignore) any relevant factor[3] from which Plaintiff's reason to believe *may* be shown or inferred. The

---

[3] Plaintiff argues the jury was improperly instructed "that it ***must*** consider any conceivable facts that might support an insured's belief in coverage—regardless of legal relevance." (Doc. 261 at 14.) The Court does not agree with Plaintiff's interpretation.

- 5 -

Court finds no apparent confusion or risk of prejudice in this instruction by including specific examples of factors the jury must consider, each of which may be sufficient to show or infer Plaintiff's reason to believe.[4]

Plaintiff cites *Nguyen v. Am. Com. Ins. Co.*, No. 1 CA-CV 12-0862, 2014 WL 1381384 (Ariz. Ct. App. Apr. 8, 2014), but this case is distinguishable.[5] In *Nguyen*, the Arizona Court of Appeals found a trial court did not err in rejecting inclusion of the permissive factors set forth in Revised Arizona Jury Instruction ("RAJI") Contract 26, instead only giving RAJI Contract 25.[6] *Id.* at *12. But nowhere in *Nguyen* did the appeals court hold or suggest that the trial court would have erred by including the permissive factors in the instruction; they simply were not a necessary component of the instruction.

Second, Plaintiff asserts the instruction was confusing because "the language shifts between subjective and objective standards without explanation or guidance." (Doc. 261 at 12.) Specifically, Plaintiff asserts the instruction confused the jury on which standard to apply—a subjective standard assessing "what Capitol actually knew or had reason to believe about Mr. Nigh's expectations"; and an objective standard assessing "what an average insured in similar circumstances would expect, regardless of the insurer's or the insured's actual knowledge." (*Id.*) But Arizona caselaw clearly contemplates both objective and subjective standards are relevant to whether an insurer had reason to believe. *See State Farm Fire & Cas. Ins. Co. v. Grabowski*, 150 P.3d 275, 280–81 (Ariz. Ct. App. 2007). Indeed, Plaintiff's own proposed instruction incorporating Arizona caselaw included both subjective considerations (e.g., whether the particular insured "did not receive full and adequate notice" or if the insurer "induced a particular insured reasonably to believe that they have coverage") and objective considerations (e.g., whether contract

---

[4] Plaintiff also asserts the instruction was prejudicial "[b]y highlighting only a few of the permissive factors." (Doc. 261 at 11.) However, Plaintiff did not previously suggest other permissive factors should be included, nor did Plaintiff include other permissive factors in its proposed jury instruction.
[5] Notably, as a pre-2015 unpublished memorandum decision of the Arizona Court of Appeals, *Nguyen* "cannot, under Arizona law, be cited as precedent or even for its persuasive value." *See N. Improvement Co. v. United States*, 398 F. Supp 3d 509, 522 (D. Ariz. 2019) (citing Ariz. Sup. Ct. R. 111(c)(1)).
[6] Plaintiff's proposed instruction on the reasonable expectations doctrine reflected only RAJI Contract 25 and excluded the permissive considerations in RAJI Contract 26.

terms "cannot be understood by the reasonably intelligent consumer" or if the insurer's actions "would create an objective impression of coverage in the mind of a reasonable insured"). In any event, the instruction given clearly communicated the essential element of the reasonable expectations doctrine as framed from Plaintiff's perspective: "The Reasonable Expectations Doctrine applies to the Property Damage Exclusion if Capitol had reason to believe Mr. Nigh would not have agreed to the Property Damage Exclusion if he were aware of it."

Lastly, Plaintiff argues the language in the instruction "inappropriately shifts the burden of proof to the insurer" because it "suggests that the insurer must prove that the insured's expectations were unreasonable." (Doc. 261 at 13.) However, this instruction does not address the burden of proof, and nothing therein contradicts the otherwise clear statement in Jury Instruction No. 2 that Defendants "Nigh and CRC bear the burden of proving by a preponderance of the evidence that the Reasonable Expectations Doctrine applies." (*See* Doc. 253 at 3.)

Viewing the instruction on the reasonable expectations doctrine as a whole, the Court finds no error as "the substance of the applicable law was fairly and correctly covered." *See Miller v. Republic Nat'l Life Ins. Co.*, 789 F.2d 1336, 1339 (9th Cir. 1986).

### C. Exclusion of Subsequent Policies and Declinations of Coverage

Lastly, Plaintiff argues the Court erred by excluding evidence of subsequent policies and declination letters, which Plaintiff argues are relevant to whether Plaintiff had reason to believe Nigh would not have agreed to the Exclusion if he were aware of it.

"Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

Unlike with prior negotiations, evidence of subsequent negotiations is categorically irrelevant to what Plaintiff believed at the time the policy was purchased. Plaintiff asserts this evidence would have directly refuted Nigh's testimony "that had he known Policy 11

included the Property Damage Exclusion, he would not have purchased the policy, the standard for the application of the reasonable expectations doctrine." (Doc. 261 at 15.) But as Plaintiff also noted, this is not the applicable standard for the reasonable expectations doctrine—the standard is whether, at the time Policy 11 was purchased, Plaintiff had reason to believe Nigh would not have purchased Policy 11. Evidence of subsequent dealings between the parties is thus not only irrelevant, but admitting this evidence would have risked confusing the jury as to the proper reasonable expectations inquiry. *See* Fed. R. Evid. 403 (noting even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . confusing the issues" or "misleading the jury").

## IV.  CONCLUSION

Based on the foregoing, the Court finds no error in not instructing the jury on the imputation of knowledge doctrine, nor in its instruction on the Reasonable Expectations Doctrine or the exclusion of subsequent policies and declination letters. Plaintiff previously indicated it intends to appeal the denial of its Motion for New Trial; thus, pursuant to the Court's prior order, (*see* Doc. 260), the parties shall brief the issue of whether the Court should certify an interlocutory appeal under 28 U.S.C. § 1292(b). *See Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) ("Certification of a non-appealable order . . . is appropriate where the order (1) involves a controlling question of law; (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." (citation modified)).

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for New Trial (Doc. 261) is **DENIED**.

…

…

…

…

…

**IT IS FURTHER ORDERED** the parties shall simultaneously file a brief supporting their respective positions on whether the Court should modify this Order to certify it for appeal no later than **February 9, 2026**. Responses shall be filed no later than **February 16, 2026**, and replies shall be filed no later than **February 23, 2026**.

Dated this 28th day of January, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge