**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Capitol Specialty Insurance Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Colorado River Consulting Incorporated, et al.,<br><br>Defendants. | No. CV-21-00858-PHX-ROS<br><br>**ORDER** |

Pursuant to the Court's Order denying Plaintiff's Motion for New Trial, (Doc. 269), the parties have briefed the issue of whether the Court should certify this prior Order for interlocutory appeal, (*see* Docs. 270–78). Having reviewed the parties' briefs, and for the reasons that follow, the Court will deny Plaintiff's Motion to Certify Order Dated January 28, 2026 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (Doc. 272).

## I.     BACKGROUND

Plaintiff Capitol Specialty Insurance Corporation brought this matter seeking a declaratory judgment that its insurance policy ("Policy 11") issued to Defendant Jeffrey Nigh[1] did not provide coverage and that Plaintiff had no duty to defend or indemnify Nigh for claims asserted by Defendant Calyxt Incorporated against Nigh in an underlying lawsuit. Defendants Nigh and Calyxt filed counterclaims for a declaratory judgment that Plaintiff is obligated to defend and indemnify Nigh against Calyxt's claims. Nigh also filed a Third-Party Complaint against his insurance broker, Cal Valley Insurance Services, Inc.

---

[1] The Court uses "Nigh" to refer collectively to both Mr. Nigh and his business, Defendant Colorado River Consulting, Inc.

("Cal Valley"), requesting judgment be entered against Cal Valley for the costs of defense and indemnification should Plaintiff prevail on the coverage issue. On July 2, 2025, the jury returned a verdict for Defendants that Policy 11 provides coverage for Calyxt's claims against Nigh.

Prior to trial, the Court made two rulings at issue in Plaintiff's request for certification. First, Plaintiff proposed a jury instruction on the imputation of knowledge doctrine, arguing it was necessary because Cal Valley acted as Nigh's agent; thus, Cal Valley's knowledge of the Property Damage Exclusion ("Exclusion") in Policy 11 should be imputed to Nigh. The Court declined to give Plaintiff's proposed instruction on imputed knowledge because "Plaintiff failed to cite any relevant authority supporting imputation of an insurance agent's knowledge onto an insured in the context of a reasonable expectations doctrine case." (Doc. 226 at 1.)

Second, the parties originally stipulated to an instruction on the reasonable expectations doctrine, but nineteen days before trial, Plaintiff requested the instruction be modified to clarify the doctrine only applies if "Capitol had reason to believe" Nigh would not have agreed to the Exclusion in Policy 11 if he were aware of it. (Doc. 210 at 11.) Plaintiff argued this additional language was required by *State Farm Fire & Casualty Insurance Co. v. Grabowski*, 150 P.3d 275 (Ariz. Ct. App. 2007). In response, Defendants proposed that if this language were included, additional language from *Grabowski* was needed to explain to the jury how to determine an insurer's reason to believe. (Doc. 218 at 58–59.) Over Plaintiff's objection, the Court's final instruction on the reasonable expectations doctrine incorporated both requested portions of the *Grabowski* language. (*See* Doc. 253 at 25–26.)

On January 28, 2026, the Court denied Plaintiff's Motion for New Trial, finding no error in not instructing the jury on the imputation of knowledge doctrine nor in its instruction on the reasonable expectations doctrine. (Doc. 269.) Because Plaintiff previously indicated its intention to appeal the denial of its Motion for New Trial, (*see* Doc. 260), the Court ordered the parties to brief the issue of whether the Court should certify the

two issues for interlocutory appeal under 28 U.S.C. § 1292(b).

## II.    LEGAL STANDARD

Generally, federal appellate courts have jurisdiction over appeals from "all final decisions of the district courts." 28 U.S.C. § 1291. An exception to this final judgment rule is contained in 28 U.S.C. § 1292(b), which permits interlocutory appeal of nonfinal orders with the consent of both the district court and the court of appeals. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.2001). Certification of a nonfinal order for interlocutory appeal requires a district judge to find (1) "the order involves a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

"The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *Villareal v. Caremark, LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (quoting *United States v. Tenet Healthcare Corp.*, No. CV04-857 GAF(JTLX), 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004)). Thus, "[e]ven when all three statutory criteria are satisfied, district court judges have 'unfettered discretion' to deny certification." *Id.* at 1068 (quoting *Brizzee v. Fred Meyer Stores, Inc.*, No. CV 04-1566-ST, 2008 WL 426510, at *3 (D. Or. Feb. 13, 2008)).[2]

An interlocutory appeal should be granted "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)). "The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances." *Id.* (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474–75 (1978) *superseded on other grounds by rule*, Fed. R. Civ. P. 23(f), *as recognized in Microsoft Corp. v. Baker*, 582 U.S. 23, 30–31 (2017)).

---

[2] Notably, Plaintiff urges the Court to "exercise its broad discretion under § 1292(b) to certify" the issues for interlocutory appeal, (Doc. 273 at 3), but Plaintiff fails to cite any authority suggesting the Court has similarly broad discretion to *grant* certification as it has to *deny* certification (even when the requirements of § 1292(b) are met).

### III.    ANALYSIS

Plaintiff seeks certification of two issues from its denied Motion for New Trial:

(1) Whether the imputation of knowledge doctrine is applicable to an insured when the reasonable expectations doctrine is also invoked under Arizona law; and

(2) Whether the Court's inclusion of permissive factors in the reasonable expectations doctrine jury instruction constitutes legal error.

(Doc. 272 at 10.)

### A.  Controlling Question of Law

The first requirement is that the issue must involve a controlling question of law. This involves two determinations: whether the issue is a question of law, and whether that question is "controlling." "Congress did not specifically define what it meant by 'controlling'" in § 1292(b). *In re Cement*, 673 F.2d at 1026. Moreover, the Ninth Circuit's guidance on this issue is "minimal." *See Villareal*, 85 F. Supp. 3d at 1068 (quoting *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*, No. CV F 05–0736 AWI SMS, 2006 WL 2085244, *2 (E.D. Cal. July 25, 2006)).

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement*, 673 F.2d at 1026). Dispositive issues, such as whether a claim exists as a matter of law, *see, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1434 (9th Cir. 1993), whether a dispositive defense is available, *see, e.g.*, *Total T.V. v. Palmer Comms., Inc.*, 69 F.3d 298, 300–01 (9th Cir. 1995), or whether a district court has subject matter jurisdiction, *see, e.g.*, *Educ. Credit Mgmt. Corp. v. Coleman*, 560 F.3d 1000, 1003 (9th Cir. 2009), clearly involve controlling questions of law. *See* 19 *Moore's Federal Practice*, § 203.31[2] (3d ed. 2022).

Whether an issue is "collateral to the merits" is "one factor that should be considered in determining whether permitting an appeal would materially affect the outcome of the litigation." *In re Cement*, 673 F.2d at 1027 n.5. Courts in other circuits also consider

whether "the certified issue has precedential value for a large number of cases."[3] *E.g.*, *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 714 (S.D.N.Y. 2025) (quoting *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13 Civ. 5784 (CM), 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015)); *see, e.g., FDIC v. First Nat'l Bank of Waukesha, Wis.*, 604 F. Supp. 616, 620 (E.D. Wis. 1985) ("It is generally held that a question of law is not 'controlling' merely because it is determinative of case at hand; rather, a question is controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases." (citing *Kohn v. Royall, Koegel & Wells*, 59 F.R.D. 515, 525 (S.D.N.Y. 1973))).

"A court's exercise of discretion is not generally an appropriate subject for interlocutory appeal as the court's exercise of discretion is not a controlling issue of law." *Hunt v. Carona*, No. CV 07-00705 MMM (MLGx), 2009 WL 10702547, at *4 (C.D. Cal. Oct. 15, 2009); *see In re Related Asbestos Cases*, 23 B.R. 523, 532–33 (N.D. Cal. 1982) ("Although the question whether *vel non* a court has abused its discretion . . . can on rare occasions be considered a controlling question of law subject to a 1292(b) appeal, '[o]rdinarily, a district court should refuse to certify such matters, not only because of the low probability of reversal, but also because the recognition of discretion results from a studied determination that appellate courts should not generally interfere.'" (quoting 16 *Wright & Miller's Federal Practice & Procedure* § 3930 at 161 (1977 & Supp. 1981))); *In re Doe*, 546 F.2d 498, 502 (2d Cir. 1976) (noting that for purposes of § 1292(b), the exercise of a court's discretion is "not primarily one of law at all").

Here, the Court's decisions regarding both jury instructions were discretionary and so are generally not appropriate for interlocutory appeal. *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987) ("The trial court has broad discretion in formulating jury instructions . . . . So long as the instructions on each element of the case are adequate

---

[3] Although some cases suggest a question is controlling *only if* it is important to a large number of other suits, this is simply one factor a court may consider. *See* 16 *Wright & Miller's Federal Practice & Procedure* § 3930, at 425 (2d ed. 1996) ("This suggestion is not supported by any statutory purpose. Certification provides a means of achieving case-specific accommodation of the antagonistic pressures that surround final-judgment doctrine that should not depend on general importance. The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement.").

to ensure that the jury fully understands the issues, no particular formulation or wording is necessary." (first citing *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir. 1985); and then citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984))). However, both decisions were based on questions of Arizona law.

On the issue of whether the issues are "controlling," Plaintiff argues that reversal on either jury instruction could warrant a new trial, so an appeal on either ground could materially affect the outcome of the litigation. Additionally, Plaintiff suggests that because "surplus lines insurance is predominantly broker-placed, the issues presented here have systemic implications that extend beyond the parties here." (Doc. 272 at 12.) But as explained in the opinions of the Court, the likelihood of reversal on both issues is minimal, which weighs against these issues being "controlling." *See* 16 *Wright & Miller's Federal Practice & Procedure* § 3930 (2d ed. 1996) ("As at the district court level, a court of appeals may consider the probability that abuse will be found in deciding whether to permit an appeal.").

### B. Substantial Ground for Difference of Opinion

The second requirement is that there must be a substantial ground for difference of opinion. "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Factors relevant to this determination may include whether "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (quoting 3 *Federal Procedure, Lawyers Edition* § 3:212 (2010)). But "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* In other words, a party's "strong disagreement" with a ruling or that "settled law might be applied differently" is not sufficient to establish a substantial ground for difference of opinion." *Id.*

### 1. Reasonable Expectations Instruction

Plaintiff notes that "[n]o binding Arizona authority establishes that a jury instruction on the reasonable expectations doctrine should include the following language:

> Such a belief may be shown by the prior negotiations or inferred from the facts. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the insured never had an opportunity to read the term, or it is illegible or hidden from view. All other factors relevant to what the insured reasonably expected in the policy must also be considered.

(Doc. 272 at 15) (quoting Doc. 253 at 25). As such, Plaintiff argues the Court's inclusion of this language "when it was not required under Arizona case law is a novel, unresolved legal question on which reasonable jurists may disagree." (*Id.*)

Although Plaintiff suggests this issue involves a novel question of first impression, the Court disagrees. The Court had "broad discretion" to include the disputed language "to ensure that the jury fully underst[ood] the issues" because "no particular formulation or wording is necessary." *See Hasbrouck*, 843 F.2d at 1044. Plaintiff notes the permissive factors included in the Court's instruction are not required under Arizona case law, but this does not establish that including these factors is contrary to Arizona law. Indeed, permissive considerations would, by definition, never be required in a jury instruction. Plaintiff also emphasizes that its proposed instruction on the reasonable expectations doctrine follows Revised Arizona Jury Instruction ("RAJI") Contract 25, which does not include the permissive factors. But Plaintiff does not provide support for its assertion that RAJI Contract 25 "purposefully excludes" the permissive factors, (*see* Doc. 273 at 8), and "the RAJI is not binding authority," *Cnty. of La Paz v. Yakima Compost Co.*, 233 P.3d 1169, 1185 (Ariz. Ct. App. 2010) (citing *State v. Logan*, 30 P.3d 631, 633 (Ariz. 2001) (en banc)).

Moreover, Plaintiff incorrectly asserts that "[n]o Arizona authority supports the District Court's inclusion of additional permissive factors," (Doc. 272 at 12), as the disputed language was taken directly from *State Farm Fire & Casualty Insurance Co. v.*

*Grabowski*, 150 P.3d 275 (Ariz. Ct. App. 2007). In other words, Plaintiff cannot dispute these permissive factors are appropriate considerations for a reasonable expectations inquiry under Arizona law. Rather, Plaintiff's disagreement with the Court's instruction stems from Plaintiff's belief that the jury was confused by the inclusion of the permissive factors and by including both subjective and objective considerations. But as the Court stated when denying Plaintiff's Motion for New Trial, "Arizona caselaw clearly contemplates both objective and subjective standards are relevant" to application of the reasonable expectations doctrine. (Doc. 269 at 6) (citing *Grabowski*, 150 P.3d at 280–81). Additionally, it is generally presumed that a jury understands and follows the instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Here, it took the jury less than two hours to unanimously render their verdict against Plaintiff, (*see* Doc. 249), and there is nothing to suggest the jury was confused by the Court's instructions. *See Shafer v. South Carolina*, 532 U.S. 36, 52–53 (2001) (jury's questions concerning instruction or requests for additional instructions may provide evidence of jury confusion).

Thus, even assuming reasonable jurists might disagree with the Court's inclusion of the permissive factors, these factors are indisputably appropriate to consider under Arizona law. And notably, Plaintiff does not point to a single conflicting case from any state or federal court in support of its position. *See Couch*, 611 F.3d at 633 ("Significantly, defendants have not provided a single case that conflicts with the district court's construction or application of California Penal Code § 319."); *Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 645–46 (8th Cir. 2008) (per curiam) ("While identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement, the County offered no such Iowa opinions, statutes or rules, and 'a dearth of cases' does not constitute 'substantial ground for difference of opinion.'"). As such, Plaintiff has failed to establish a substantial ground for difference of opinion regarding the propriety of the Court's instruction on the reasonable expectations doctrine.

### 2. Imputation of Knowledge Instruction

Plaintiff notes "[n]either the Ninth Circuit nor any Arizona court has addressed

whether the imputation of knowledge and the reasonable expectations doctrine apply concurrently, creating a novel and unresolved issue on which fair-minded jurists may reasonable disagree." (Doc. 272 at 12–13.)

However, "[i]t is well settled that 'the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" *Couch*, 611 F.3d at 634 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Plaintiff fails to point to a single conflicting case from any state or federal court that concurrently applies the imputation of knowledge doctrine alongside the reasonable expectations doctrine. And although Plaintiff disputed the precise formulation of the reasonable expectations instruction, it has never argued that a reasonable expectations instruction was not appropriate in this case. Thus, while Plaintiff generally frames the issue as whether both doctrines can apply concurrently, the more precise issue is how—if at all—the imputation of knowledge doctrine applies in a reasonable expectations case.

Notably, the permissive factors in the Court's instruction were nonexhaustive, and the jury was not foreclosed from considering whether Nigh "receive[d] full and adequate notice of the term in question." (Doc. 253 at 25.) Given that Cal Valley was the intermediary between Capitol and Nigh, the jury would not have erred in considering whether Plaintiff had reason to believe that a reasonable insured in Nigh's position was aware of the Exclusion through his insurance broker. But if the Court had given Plaintiff's proposed instruction on the imputation of knowledge, the jury would have been required to impute any knowledge of the Exclusion to Nigh. As the Court noted when it rejected the proposed instruction, requiring the jury to impute Cal Valley's knowledge to Nigh would obviate the need to conduct a reasonable expectations inquiry and "dramatically change the [Reasonable Expectations] Doctrine to the point such that it is unclear how one would ever be able to maintain a Reasonable Expectations Doctrine claim." (*See* Doc. 262 at 6.) Thus, to the extent there is an "inherent tension between well-established agency principles and the reasonable expectations doctrine," (Doc. 272 at 15), the Court's reasonable

expectations instruction strikes an appropriate balance between the two doctrines.

The Court acknowledges Plaintiff's argument that "[i]t would be illogical—and unfair—to place on the insurer the burden of discerning the insured's 'reasonable expectations' when the broker, not the insurer, is responsible for explaining coverage, identifying exclusions, and procuring a policy that meets an insured's expectations and aligns with the insured's needs." (*See* Doc. 272 at 14.) But this alone is not sufficient to establish a substantial ground for difference of opinion. Moreover, promoting fairness to the insurer would seemingly conflict with the policy promoting fairness to the insured on which the reasonable expectations doctrine is premised. *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, No. CV 04-0662 PHX-DGC, 2006 WL 1663437, at \*5 (D. Ariz. June 12, 2006) ("The doctrine of reasonable expectations is designed to protect the insured, generally individual consumers without legal training or bargaining power, from boilerplate language that did not conform to their reasonable expectations regarding the coverage of the policy.") As such, Plaintiff has failed to establish a substantial ground for difference of opinion regarding the Court's failure to give Plaintiff's requested instruction on imputed knowledge.

### C. Materially Advance Ultimate Termination of Litigation

Lastly, even if Plaintiff had shown a substantial ground for difference of opinion regarding either jury instruction, certification for interlocutory appeal should be denied because an appeal is not likely to materially advance the ultimate termination of the case. "The 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027). Under this prong, "the district court should consider the effect of a reversal on the management of the case." *Villareal*, 85 F. Supp. 3d at 1071 (quoting *L.H. Meeker v. Belridge Water Storage Dist.*, No. 1:05-CV-00603 OWW, 2007 WL 781889, at \*6 (E.D. Cal. Mar. 13, 2007)); *see United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate

consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit. Examples of such questions are those relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case.").

This litigation commenced nearly five years ago, and permitting an interlocutory appeal at this stage would only add further delay.[4] *Cf. Lewis v. Am. Express Co.*, No. CV-24-03370-PHX-DWL, 2025 WL 3089002, at *6 (D. Ariz. Nov. 5, 2025) (certifying appeal of denied motion to dismiss where "all of [the plaintiff]'s claims are potentially subject to the statute-of-limitations issue that [the defendant] seeks to certify and [the defendant] raised that issue . . at the very beginning of the case, before discovery even began"). The three possible outcomes of an interlocutory appeal will each delay the inevitable Phase Two trial. First, if the Ninth Circuit affirms the Court's rulings, then the Phase Two proceedings would have been delayed. Second, if the Ninth Circuit reverses and remands for a new Phase One trial, the jury may reach the same verdict, and the case would proceed to a much-delayed Phase Two. Third, if the Ninth Circuit reverses and remands for a new Phase One trial, and the jury instead finds in favor of Capitol, the case would then proceed to a much-delayed Phase Two.

Plaintiff notes two cases where "[c]ourts have approved § 1292(b) certification in multi-party, multi-phase cases where early appellate review can avoid wasteful or duplicate proceedings," (Doc. 273 at 4), but these cases are readily distinguishable. Both *In re Air Crash Disaster at JFK Int'l Airport*, 479 F. Supp. 1118 (E.D.N.Y. 1978), and *Steering Comm. v. United States*, 6 F.3d 572 (9th Cir. 1993), were multidistrict, multi-plaintiff air disaster cases in which a single district court made liability determinations in consolidated proceedings prior to numerous jury trials across the country to determine damages for the

---

[4] For the fiscal year ending September 30, 2024, the median time interval for cases decided on the merits to proceed through the appellate process in the Ninth Circuit from filing a notice of appeal to final disposition was 12.7 months. *2024 Annual Report: United States Courts for the Ninth Circuit* 40, https://cdn.ca9.uscourts.gov/datastore/judicial-council/publications/AnnualReport2024.pdf.

113 and 82 individuals killed in the respective accidents. Given the dozens of damages trials that were to take place, a single interlocutory appeal of the preliminary liability determination was vastly more efficient and avoided any risk of inconsistent rulings from different circuits that "would effectively dissolve the commonality foundation about which th[e] multidistrict litigation was built." *Air Crash Disaster*, 479 F. Supp. at 1127; *see Steering*, 6 F.3d at 575 ("We agree with the court in *Air Crash Disaster* that the liability phase of a multidistrict, multiparty case of the sort at hand is appealable under § 1292(b)."). By contrast, here there has not yet been a determination of Capitol's liability, and if Capitol is found liable, only a single trial would be needed to determine damages. Moreover, the application of the final judgment rule here presents no similar risk of inconsistent appellate rulings on the single Phase One coverage determination.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff has failed to establish "exceptional circumstances" justify certification for interlocutory appeal of its denied Motion for New Trial. *See In re Cement*, 673 F.2d at 1026.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion to Certify Order Dated January 28, 2026 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (Doc. 272) is **DENIED**.

Dated this 14th day of April, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge